## BUMBERGER and others *v.* GERSON.

*(Circuit Court, W. D. Louisiana. April, 1885.)*

1. ATTACHMENT—FRAUDULENTLY DISPOSING OF PROPERTY—INTENT MUST EXIST AT TIME OF MAKING AFFIDAVIT.

   The fraudulent act of a debtor, made the ground of an attachment, must have accrued before or exist at the time the affidavit for the attachment is made by the creditor.

2. SAME—INSUFFICIENCY OF BOND—ALLOWING ADDITIONAL SECURITY TO BE GIVEN.

   The insufficiency of a surety on the bond at the time the attachment was issued will not render it void, and entitle defendant to have it dissolved, but additional security may be required and taken by the court.

At Law.

*Millsaps & Sholars, A. Goldthwaite,* and *M. C. Elstner,* for plaintiffs.

*Boatner & Boatner,* for defendant.

BOARMAN, J. Defendant's motion to dissolve the attachment in these cases presents three different grounds, which alike apply to all of these cases. A stipulation waiving the jury is in the record. The reasons urged by defendant's counsel, except the questions of the sufficiency of the surety on the bond, have been considered and passed upon as being insufficient to dissolve the attachment. In none of the grounds for dissolving the attachment do the defendants deny the fraudulent acts charged against them. The allegation as to the insufficiency of the bond presents an interesting matter of fact and law. The bond in this case is for $1,500; and the same surety, Allen, appears as the sole surety on a number of bonds where the writs were issued against the several defendants affected by this motion to dissolve the several bonds, were signed on the same day, and amount aggregately to over $20,000. The proof shows that Allen's property, liable to seizure, is worth about $15,000.

The plaintiff alleges his right to the attachment under act of 1868. He says, substantially, that at the date of the attachment Gerson had converted, or was about to convert, his property into money, or evidences of debt, with intent to place it beyond the reach of his creditors. For the purposes of this cause, during these motions, the

debt sued on, under the pleadings, must be treated as justly due by the defendants, and we must also consider that Gerson, in the motive of his acts in the premises, had the intent to defraud his creditors, the plaintiffs in these suits.

The Louisiana courts have repeatedly laid down the following rules in relation to attachments, and to the causes for their dissolution:

1. That an attachment must stand or fall, according to the state of facts at the date when it issues, and it cannot be cured by a subsequent event.

2. That the surety on the bond must be good; that is, he must be competent to enter into and bind himself by contract; he must be solvent and able to pay his debts and liabilities, including the amount of the bond; he must have property in value beyond the amount of the bond; the property upon the value of which the bondsman's sufficiency is to be tested must be liable to seizure.

In making this test I think the surety's property should be of such a kind as the law will allow to be seized and sold to satisfy the obligations of the bond, and that the court should not, with the view of testing the sufficiency of the surety, take into consideration the extent of the facility or difficulty which might attend the marshal in effecting the seizure of the property.

3. Attachment is a harsh and severe remedy, and strict proof should be required on a motion to dissolve.

The defendants rely on the inflexibility of the first rule, and say that the fact of the sufficiency of the surety must exist among the state of facts at the time the attachment issues.

In applying the first rule suggested, let us see what the courts mean and intend to imply in saying that the attachment must stand or fall on the state of facts at the date when it issues. What things or facts must be true, under the reason of that rule, at the time the attachment issues? Does the reason of the rule suggest that the facts relied on for the issuance of the attachment writs should exist at the time the plaintiff signs the affidavit setting up the causes for his attachment; or does the rule require that the allegations setting up the fraudulent purpose of the debtor should be true at the time of the issuance by the clerk of the writs?

It is conceded that the untruth of the allegations charging the fraudulent acts on the part of the debtor at the date of the affidavit must be fatal to the validity of the attachment, whatever may be the solvency of the surety. In this case it must be true that at the time plaintiff made his affidavit Gerson was fraudulently disposing of his property, or was about to dispose of it. If his fraudulent intent and acts occurred after the time plaintiff made the affidavit, the attachment, at whatever time the writs may have been issued by the clerk, must fail. The insufficiency of these facts stated in the petition and affidavit cannot be cured by a subsequent event; for the plaintiff will not be allowed to show any fraudulent acts of the defendant which occurred after the date of the affidavit, except in so far as such sub-

sequent acts of the plaintiff might be admissible to illustrate the defendant's fraudulent motive and purposes, even though the writs were not ordered by the judge, or, in fact, issued by the clerk for a day or more after the filing in the court of the petition and affidavit.

Recurring a moment to the practice, in the matter of application for and in the issuance of the attachment writs, we will find that the particular time at which the rule would require the alleged facts must be true, refers to the time at which the affidavit is made by the defendant, rather than to the time at which the writs issue; for it may be, as it often is, that the plaintiff makes the affidavit a day or several days before the judge has an opportunity to grant the order for the issuance of the writs; the judge's order is granted only after the petition and affidavit are presented to him. Having obtained the order to let the writ issue, on the plaintiff's giving bond according to law, the plaintiff in good faith presents his surety, whom he believes to be solvent. The clerk, to whom the law confides the *quasi* judicial duty of passing on the sufficiency of the surety, may approve or reject the surety; if he approves the surety, the plaintiff has done all that he can do in the matter; if he rejects the surety, the plaintiff may tender another surety.

When the clerk takes the surety offered by the plaintiff, who is without collusion with his surety, or knowledge of his insufficiency, the result is to show to all parties, as far as it is practicable, that the bondsman is sufficient in law. Anterior to the act of 1868 an attachment would not lie for the reasons or on the grounds provided for in that act; then an attachment issued when the debtor resides out of the state, or has left the state permanently; when he is about to leave the state without there being a possibility, in the ordinary course of judicial proceedings, of obtaining or executing a judgment against him previous to his departure. The enlargement of the grounds for an attachment so that it is for the first time, under the act of 1868, made a remedy against the fraudulent acts of a debtor, suggests that the first rule, which was laid down, as it appears, before the remedy by attachment was so extended, should not now, in its literal significance, apply.

We must assume that all the fraudulent acts of the debtor in this case existed at the time the affidavit was made. These facts are not denied, but the debtor says, notwithstanding his fraudulent acts, the attachment should fall; that now, plaintiff's only remedy to prevent injury from his fraudulent acts should be denied to him; that plaintiff's only remedy now, to make effectual in his favor, against defendant's fraudulent acts, the common pledge which he, as a creditor, had on his debtor's property, must be denied and taken from him because the clerk approved a bondsman who was not then sufficient. The plaintiff swears that the fraudulent acts upon which he relies for attachment had occurred before, or they existed at, the time of the affidavit; he does not swear to the sufficiency of the surety at any time.

Considering the facts, which we assume to be true, it does not appear to me that the courts in Louisiana, in laying down the first of the rules herein suggested, meant to treat and consider the matter of the sufficiency of the surety as one of the facts which must necessarily enter into the state of facts existing when the writ issues.

If the surety was not then sufficient, why cannot the court now, looking to the interest and rights of both plaintiff and defendant, correct the mistake that the plaintiff made in believing that Allen was a sufficient surety, or the bad judgment of the clerk who justified and approved the bondsman presented in good faith by the plaintiff? As the rule would apply in this case, it cannot be said that it is founded in equity; the conservatory writ in this case, if this rule is inflexible, avails the plaintiff nothing against the debtor who admits his fraudulent purpose to avoid payment. It is not denied that the court should allow the plaintiff, at any time, to give additional security, as the penalty of having his attachment set aside, if the surety, whom the clerk approved as sufficient when he issued the writs, should become afterwards insufficient, and that such a bond will take effect from the date of the original bond.

Without deducing from these generalizations the conclusion that the plaintiff in all attachment suits should be allowed to make sufficient a bond that was insufficient at the time the clerk took and approved the bond, we, in consequence of the facts established in this case, do not feel constrained to regard the rule which we have been discussing as so inflexible as to forbid the plaintiff to now give additional security rather than to dissolve the attachment. The proof shows that Allen is worth about $15,000 in such property as the law seems to require; the several bonds which were signed on the same day by him amount to over $20,000. It is not denied that in suit No. 67 Allen is a sufficient surety. In the absence of proof as to the time of the day at which this or that bond was signed, how can the court say at what time, or upon what particular one of these several bonds, Allen's sufficiency as a surety became expended? Can it be said, in the face of these facts, that the rule which seems to require that an attachment should stand or fall upon the state of facts existing at the time it issues forbids the court now to allow the plaintiff to give, if he chooses, additional security? Shall the plaintiff in suit No. 67 be considered as having given sufficient security, and the plaintiff in the some one or more of the other suits, later in number, be told that the bond in his case was signed by Allen at a time when his sufficiency was expended and the conservatory writ must prove useless against his fraudulent debtor?

The difficulties presented by the facts in this case, in the mind of the court, can be met satisfactorily only by allowing the plaintiff to supplement his original bond by giving additional security in each of the several cases. In a case where we must presume, as we do in this case, that the debtor justly owes the debt, and that he is by his

fraudulent acts, which he does not deny, rendering nugatory and ineffectual all of the ordinary remedies which the creditor might adopt, it cannot be said that the remedy by attachment is a severe or harsh one. The facts in this case, as it now stands before the court, do not show that a severe remedy was adopted by the attaching creditor to enforce the payment of the debt justly due to him. *Erstein* v. *Rothschild,* 22 FED. REP. 65.

The clerk is ordered to take additional security in each of the several cases.